IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRETT DAVIS, ET AL., )
)
        Plaintiffs, )
)
    v. ) 1:12-CV-888
)
CITY OF GREENSBORO, )
NORTH CAROLINA, )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiffs in this action are three current or former Greensboro police officers. Brett Davis currently works for defendant City of Greensboro, and Brian Smoot and Steve Szymeczek recently retired after working for the City for a number of years. They brought this action to challenge several aspects of their compensation and benefits. These claims fall into three categories: underpayment of longevity compensation due, underpayment of overtime compensation due, and underpayment of contributions to the retirement system. They rely on the United States and North Carolina constitutions, the Fair Labor Standards Act ("FLSA"), various North Carolina statutes, and North Carolina contract law.

Pending is Defendant's Motion to Dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (6), and (7). (Doc. 20.) Equal protection and FLSA claims relating to off-duty pay will be dismissed. Otherwise, because the plaintiffs have adequately pled that the City had contractual and statutory obligations to implement longevity compensation increases,

include longevity compensation in base rate of pay, and treat off-duty pay as pensionable, the motion will be denied.

## I. UNDERPAYMENT OF LONGEVITY PAY

For many years, the City has paid its employees, including police officers and firefighters, a base salary and, after a certain number of years of service, an annual longevity payment.[1] (Doc. 18 at ¶ 50.) Effective July 1, 1994, the City revised the longevity payment program so that employees hired after July 1, 1990, like Officer Davis, would receive an annual lump sum amount as longevity pay after completing five years of employment. (*Id.* at ¶ 51.) The amount of this longevity payment was calculated as a percentage of salary. (*Id.*) The percentage went up every five years up to a maximum of twenty years, and thus resulted in what was essentially a series of pay raises for experienced employees. (*Id.*)

In 2010, the City stopped increases in longevity pay for current employees and did away with longevity pay completely for new employees. (*Id.* at ¶ 57.) As a result, when Officer Davis reached his next five-year mark, on December 1, 2010, his annual longevity pay was maintained at 6 percent of his salary instead of increasing to 7.5 percent of his salary. (*Id.* at ¶ 63.) Other City employees experienced similar plateaus in longevity compensation. (*Id.* at ¶ 64.)

Officer Davis[2] contends that when the City capped longevity payments, it breached its contract with him and violated various federal and state constitutional rights. All of these claims depend on the existence of a contract between the City and Officer Davis which included an agreement that the City would continue to increase longevity pay pursuant to the 1994 schedule

---

[1] As is appropriate when reviewing a motion to dismiss, the facts set forth are taken from the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

[2] Mr. Smoot and Mr. Szymeczek do not assert a claim related to capping of longevity pay.

as long as he continuously worked for the City. In the alternative, Officer Davis alleges that the City is estopped from refusing to pay him the longevity increases pursuant to the 1994 schedule.

Officer Davis specifically alleges:

- "Under this longevity payment program, a City employee's right and entitlement to this longevity payment became vested after **five (5)** years of continuous service." (*Id.* at ¶ 53 (emphasis in original).)

- "A contractual relationship exists between the Defendant City and its employees, including the Plaintiffs. For employees, like Plaintiffs, whose right and entitlement to the longevity payment had vested, the payment became an integral part of their employment contract with the City. In fact, upon information and belief, the Defendant City specifically identified the longevity payment as a 'benefit' in its Employee Handbook. At all times relevant to Plaintiff Davis' claims, the Defendant treated longevity pay as a vested benefit and not as a discretionary bonus. Furthermore, Plaintiff Davis has relied on his right and entitlement to longevity pay at the amount vested and demonstrated this reliance by continuing his employment with Defendant and foregoing other employment opportunities." (*Id.* at ¶ 55.)

- "Plaintiff Davis has fulfilled all of his obligations under that employment contract, but the Defendant City has breached its contractual obligations with respect to longevity pay." (*Id.* at ¶ 56.)

- "Defendant's actions constitute a breach of its contractual relationship with and contractual obligations to the Plaintiff." (*Id.* at ¶ 144.)

- "By virtue of Plaintiff's vested interest in the longevity payment program as it existed prior to **May 2010** (i.e. "pre-cap"), Defendant is estopped under the doctrines of equitable estoppel and quasi-estoppel from refusing to pay Plaintiff his longevity payment as it existed prior to **May 2010**." (*Id.* at ¶ 148 (emphasis in original).)

The City contends that these allegations are insufficient to establish the existence of a contract between the City and its employees, including Officer Davis. Specifically, the City contends that it did not enter into a contract with its employees to increase longevity pay into the future; that by state law any such contract has to be in writing and Officer Davis has not alleged any written contract; and that it had the right to do away with longevity increases going forward at any time. The City further contends that without a contractual obligation, there are no viable constitutional claims and the City is immune from suit for estoppel.

3

Officer Davis has alleged the existence of a contract between himself and the City that included as a material term the promise to increase longevity pay for employees who work for at least five years. The City's contentions that there was no such contract and that it could modify the longevity plan going forward are defenses that require development of the facts and are inappropriate for resolution at the Rule 12(b)(6) stage.

The City relies on N.C. General Statute § 159-28(a) and City of Greensboro Charter § 4.111 for its argument that any such contract must be in writing and accompanied by a pre-audit certificate. The cases in this area appear to be highly fact-specific,[3] and thus this issue is also inappropriate for resolution at the Rule 12(b)(6) stage.

The City contends that it is immune from suit for estoppel and that the Court has no jurisdiction over such a claim. The argument rests on the premise that the payment of longevity bonuses was discretionary, not contractual. *See Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 420, 573 S.E.2d 715, 718 (2002) (explaining that sovereign immunity is not a valid defense to contract claims (citing *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976))). As explained *supra*, Officer Davis has sufficiently alleged a contractual longevity payment obligation. The immunity defense is therefore inappropriate for resolution at this stage.

---

[3] *See, e.g.*, *Howard v. Cnty. of Durham*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2013 WL 1878933, at *4-6 (May 7, 2013) (affirming grant of motion to dismiss where breach of contract action alleged an oral settlement agreement because "[a] settlement agreement requiring a county to pay money is subject to the requirements of . . . § 159-28(a)" and "[a]n oral contract, by its very nature, cannot contain the written certification required by . . . § 159-28(a)"); *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 102-03, 545 S.E.2d 243, 247-48 (2001) (holding that written lease agreement providing for annual payments by county to corporation for use of certain equipment was not a valid contract absent evidence of a pre-audit certificate complying with § 159-28(a)); *Myers v. Town of Plymouth*, 135 N.C. App. 707, 713-14, 522 S.E.2d 122, 126 (1999) (holding that a contract signed by a municipality in one year that results in a financial obligation in a later year will not violate § 159-28(a)).

Officer Davis has adequately alleged a contract with the City. The City's Rule 12(b)(6) defenses to the longevity-payment-related constitutional claims and claims for declaratory and injunctive relief were all based on the lack of a contractual obligation. The claims for underpayment of longevity pay arising out of the City's decision to freeze longevity pay at 2010 levels may proceed.

## II. UNDERPAYMENT OF OVERTIME

The City does not and never has included longevity pay when calculating the base rate of pay used to calculate the plaintiffs' overtime pay. (Doc. 18 at ¶ 65.) The plaintiffs contend this violates the FLSA. The plaintiffs' allegations are specific, and this is a factual dispute inappropriate for resolution at the Rule 12(b)(6) stage.

The plaintiffs allege numerous other problems under the FLSA with the way the City tracks and compensates overtime work. These allegations are also specific, and they are sufficient to state a claim for relief.

## III. UNDERPAYMENT OF CONTRIBUTIONS TO RETIREMENT SYSTEMS

City of Greensboro police officers participate in the North Carolina Local Government Employees' Retirement System ("LGERS") established by N.C. General Statute §§ 128-21 et seq. and the Supplemental Retirement Income Plan for Local Governmental Law-Enforcement Officers ("SRP") established by N.C. General Statute § 143-166.50.

The North Carolina General Assembly established LGERS in 1939 "for the purpose of providing retirement allowances and other benefits" for local government employees. N.C. Gen. Stat. § 128-22; *see Taylor v. City of Lenoir*, 129 N.C. App. 174, 177, 497 S.E.2d 715, 718 (1998). Under LGERS, the City is required to deduct 6 percent of the "compensation" received by an employee and place that money into an annuity savings fund. N.C. Gen. Stat. § 128-

5

30(b)(1). The City must also, from its funds, pay into a pension accumulation fund a "normal contribution" and an "accrued liability contribution" equal to 6 2/3 percent and 8 percent, respectively, of each police officer's "actual compensation." N.C. Gen. Stat. § 128-30(d)(1).

From 1987 to 1988, the SRP statute obligated the City to contribute an amount equal to 2 percent of a participating law enforcement officer's "monthly compensation" to fund supplemental retirement benefits for the officer. N.C. Gen. Stat. § 143-166.50(e). Beginning in July 1988, the City's obligation increased to an amount equal to 5 percent of the officer's "monthly compensation." *Id.*

The plaintiffs challenge three aspects of how the City made and makes contributions to the LGERS and SRP retirement funds.

### A. Longevity Increases

Officer Davis contends that the City is underpaying its LGERS and SRP contributions because it is calculating those contributions based on longevity pay as frozen on June 30, 2010, and not including the increased longevity payments to which he is entitled. (*See* Doc. 18 at ¶ 53.) Because the claims asserted by Officer Davis related to underpayment of longevity compensation have survived, this claim also survives.[4]

### B. Overtime

The plaintiffs also contend that the City is underpaying its LGERS and SRP contributions because it is calculating those contributions based on overtime compensation that does not

---

[4] It appears undisputed that the City has treated and should treat longevity pay as a form of annual and monthly compensation. Because the City's LGERS and SRP contributions are based on an employee's annual and monthly compensation, respectively, any failure to pay longevity compensation due would result in lower contributions by the City to the retirement funds than would have been paid had longevity compensation been correctly calculated and paid.

6

include longevity pay in employees' base rate of pay. (*See* Doc. 18 at ¶ 65.) Because the plaintiffs' FLSA claims survive, this claim also survives.[5]

## C. Off-Duty Pay

Under certain circumstances, police officers in Greensboro are allowed to work in uniform when they are off-duty. (Doc. 18 at ¶ 16-21.) The City strictly controls such off-duty work, and an officer cannot work off-duty in his uniform without the City's approval. (*Id.* at ¶ 18.) All third parties desiring to hire off-duty police officers must submit such requests to the City, which manages the process. (*Id.* at ¶ 19.)

The City bills the third party requesting the off-duty services for all off-duty wages plus an administrative fee, and the third-party requestor pays directly to the City. (*Id.* at ¶¶ 20-21.) The City deposits these payments into its General Fund, where they are commingled with other sources of revenue and other public funds. (*Id.*) At the end of each pay period, officers who have worked off-duty assignments receive a single paycheck from the City that includes the officer's regular on-duty wages, overtime on-duty wages, and off-duty wages. (*Id.* at ¶ 33.) At the end of the year, officers receive a W-2 form from the City listing a single "wages, tips and other compensation" figure that combines on-duty and off-duty wages. (*Id.*)

Officers working off-duty under this system are authorized to exercise their law enforcement authority, including the power to arrest. (*Id.* at ¶ 29.) Injuries are covered by the City's workers' compensation fund. (*Id.* at ¶ 30.) Officers are required to comply with all City policies and procedures while working off-duty and are subject to discipline if they do not. (*Id.*

---

[5] It appears undisputed that the City has treated and should treat overtime pay as a form of annual and monthly compensation. Because the City's LGERS and SRP contributions are based on an employee's annual and monthly compensation, respectively, an undercalculation of overtime pay would result in lower contributions by the City to the retirement funds than would have been paid had overtime pay been correctly awarded.

at ¶ 31.) Officers working off-duty are subject to dispatch by the City to other locations to assist with general law enforcement duties. (*Id.* at ¶ 32.)

Up until December 2009, the City included most, if not all, of this off-duty pay in its determination of "actual compensation" for purposes of calculating its LGERS contributions and in its determination of "monthly compensation" for purposes of calculating its SRP contributions. (*Id.* at ¶ 34.) Thereafter, however, the City stopped including pay for off-duty work unless it was performed on City premises or at City-sponsored events. (*Id.* at ¶ 37.)

The plaintiffs allege that the money earned through off-duty employment should be treated as "actual compensation" under the LGERS statute and as "monthly compensation" under the SRP statute and that the City is therefore required to make retirement contributions on off-duty pay. They allege that the City's failure to treat off-duty earnings as pensionable compensation violates their rights under the United States and North Carolina constitutions, the LGERS and SRP statutes, and North Carolina contract law.[6]

1.  **Statutory Claims Relating to Off-Duty Pay**

Whether off-duty pay is LGERS-eligible depends on whether it qualifies as "compensation," which is defined in the LGERS statute as

> all salaries and wages prior to any reduction pursuant to sections 125, 401(k), 403(b), 414(h)(2), and 457 of the Internal Revenue Code, not including any terminal payments for unused sick leave, derived from public funds which are earned by a member of the Retirement System for service as an employee in the unit of the Retirement System for which he is performing full-time work.

---

[6] The complaint also appears to include an FLSA claim alleging that the City's treatment of off-duty wages results in an underpayment of overtime compensation. (Doc. 18 at ¶¶ 92-95.) It is unclear from the rest of the complaint how off-duty pay is related to overtime compensation, and during a hearing on the motion to dismiss, counsel for the plaintiffs confirmed that there is no FLSA claim related to off-duty work. The Court will therefore dismiss the plaintiffs' third cause of action.

N.C. Gen. Stat. § 128-21(7a)(a).  The City contends that off-duty wages, by definition, are not paid "for service as an employee in" the Greensboro Police Department.  However, the plaintiffs allege that the "off-duty" label alone is not dispositive because police officers working off-duty assignments are concurrently on-call for the City and are "on a frequent, if not regular, basis" dispatched to perform regular police work otherwise considered "on-duty."  (Doc. 18 at ¶ 32.)  Discovery is therefore necessary to determine whether and to what extent wages labeled "off-duty" by the City are in fact being used to compensate LGERS-eligible work for the City.  This need for discovery is underscored by the City's alleged historical treatment of off-duty work as LGERS-eligible and continued treatment of some off-duty work as LGERS-eligible.

The City further contends that police officers' off-duty pay is not "derived from public funds" but rather is derived from fees charged to the third-parties requesting the off-duty services.  This is a factual dispute inappropriate for resolution at the pleadings stage.  The plaintiffs' LGERS claim survives the Rule 12(b)(6) motion to dismiss.

Unlike the LGERS statute, the SRP statute does not specifically define the terms "compensation" or "monthly compensation."  The City asks the Court to apply the LGERS definition to the SRP claim, and the plaintiffs do not appear to object.  Because the LGERS definition of compensation includes restrictive criteria not present in the SRP statute (i.e., "derived from public funds" and "for service as an employee in the unit"), the Court assumes for purposes of this motion that the definition of compensation applicable to the SRP is no more restrictive and at least as broad as the LGERS definition.  Because the LGERS claim survives the motion to dismiss, so too does the SRP claim.

        2.        **Other Claims Relating to Off-Duty Pay**

The City's Rule 12(b)(6) defenses to the off-duty-related due process claims, unauthorized diversion claim, breach of contract claim, and claims for declaratory and injunctive relief, as well as its jurisdictional argument that it is immune from suit for estoppel, are all based on a lack of any statutory obligation. As explained *supra*, the plaintiffs have adequately alleged that the City had statutory obligations to make LGERS and SRP contributions on off-duty wages. These claims may therefore proceed.

Mr. Smoot and Mr. Szymeczek also allege that the City's payment of retirement contributions on some but not all off-duty work constitutes an equal protection violation under the United States and North Carolina constitutions.[7] The standard applicable to North Carolina equal protection claims is identical to the one applied to federal equal protection claims. *See Clayton v. Branson*, 353 N.C. 696, 719 n.11, 549 S.E.2d 840, 856 n.11 (2001). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To the extent the plaintiffs allege any unequal treatment by the City, they characterize that treatment as "arbitrar[y]," "illogical," and "inconsistent," not intentional or purposeful. (*See* Doc. 18 at ¶¶ 37-38.) Thus, Mr. Smoot and Mr. Szymeczek have not adequately pled an equal protection claim. *See Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002).

### 3. Rule 12(b)(7) Defense

Pursuant to Rule 12(b)(7), the City has moved to dismiss all of the off-duty-related claims for failure to join the LGERS Board of Trustees, the SRP Board of Trustees, and the

---

[7] Officer Davis withdrew his equal protection claim in response to the motion to dismiss. (Doc. 25 at 14.) The Court will dismiss that claim.

10

North Carolina State Treasurer's Office, each of which it contends is a necessary party under Federal Rule of Civil Procedure 19. The City's theories as to how failure to join these parties could impair its ability to comply with a court order arising out of this suit are speculative. The LGERS statute explicitly states that payments considered "compensation" by a municipal employer and on which the employer makes LGERS contributions will be treated as compensations for retirement purposes. N.C. Gen. Stat. § 128-21(7a)(c). Thus, the City's fear that the LGERS Board of Trustees might "rule that these contributions are still not pensionable and refuse to accept them and include them in Plaintiffs' retirement accounts," (Doc. 21 at 19), appears unfounded. And the City fails to identify a basis for concluding differently with respect to the SRP Board's or the Treasurer's Office's willingness to accept off-duty wages as SRP-eligible. The Court will deny the City's Rule 12(b)(7) motion.

It is **ORDERED** that Defendant's Motion to Dismiss, (Doc. 20), is **GRANTED IN PART** and **DENIED IN PART**, specifically:

1. The motion is granted as to Plaintiffs' Third Cause of Action, (Doc. 18 at ¶¶ 92-95), which alleges an FLSA violation relating to off-duty pay, and that claim is **DISMISSED**.
2. The motion is granted as to the equal protection claims alleged in Plaintiffs' First Cause of Action, (*id.* at ¶¶ 84-87), and Fourth Cause of Action, (*id.* at ¶¶ 96-99), and those claims are **DISMISSED**.
3. As to all other causes of action, the motion is **DENIED**.

This the 28th day of May, 2013.

_____
UNITED STATES DISTRICT JUDGE

11